UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESUS MANUEL CERVANTES-
MUNOZ,

   Petitioner,

v.

KEVIN RAYCRAFT, *et. al.*,

   Respondents.

_____ /

Case No. 26-10661

Hon. F. Kay Behm
United States District Judge

## OPINION AND ORDER GRANTING THE PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 1)

### I.  PROCEDURAL HISTORY

On February 27, 2026, Jesus Manuel Cervantes-Munoz, a citizen

of Mexico, filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241, alleging that he is being unlawfully detained by

Respondents at the St. Clair County Jail in Port Huron, Michigan, in

violation of the Immigration and Nationality Act ("INA") and the Due

Process clause of the Fifth Amendment.  ECF No. 1.

Respondents, the Secretary of the United States Department of

Homeland Security, and Immigration and Customs Enforcement

Detroit Field Office Director Kevin Raycraft, argue that Petitioner's

1

detention is not unlawful under the INA, specifically 8 U.S.C. § 1225(b)(2), and does not violate his Due Process rights.  Respondents also urge the Court to refrain from deciding the merits of the petition until Petitioner administratively exhausts his claims, and to either deny the petition or dismiss all Respondents except for Raycraft.  ECF No. 7.

This case is one more instance of hundreds of challenges in this state to noncitizen detention arising out of the Department of Homeland Security's current interpretation of the Immigration and Nationality Act.  This court has on several occasions addressed the same legal question and concluded that the interpretation being advanced by the Government, which would require the mandatory detention of hundreds of thousands, if not millions, of individuals currently residing within the United States, is contrary to both the plain text of the statute and the overall statutory scheme.  *See, e.g.*, *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025).

For the reasons below, this court reaches the same conclusion as it has previously, finds that oral argument is not necessary to decide the

petition pursuant to LR 7.1(f)(2), **GRANTS** the petition for a writ of habeas corpus, and orders that Petitioner receive a bond hearing as provided under 8 U.S.C. § 1226 within seven days of entry of this order, or else be released immediately.

## II.    FACTUAL BACKGROUND

The relevant facts are straightforward.  Petitioner is a citizen of Mexico who has resided in the United States for over two years.  He is 47 years old.  He was arrested by ICE in January 2025, who initiated removal proceedings.  Petitioner has also filed an application for asylum, which is one path to legally remaining in the United States. That application, he alleges, is on appeal.  ECF No. 1.[1]

Respondents placed Petitioner in civil immigration removal proceedings, alleging that he had entered the United States without inspection.  8 U.S.C. § 1182(a)(6)(A)(i).  Petitioner presently remains in detention subject to ICE's policy of mandatory detention; he has not

---

[1] All facts are taken from the Petition, and are not contested for purposes of the issues presented.  Respondents allege that no appeal of the asylum application has been docketed; that fact is not important to the decision here.

been offered the opportunity to post bond or be released under other conditions.

## III.  ANALYSIS

Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).  "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).  A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law.  28 U.S.C. § 2241.  If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief.  § 2243.

### A.    Raycraft is the proper Respondent

Broadly, the present Petition presents the same legal issues this court first considered in *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025).  As explained below, the court largely adopts its reasoning in that decision rather than repeat itself as to each step of the analysis.

However, another issue raised by Respondents continues to merit some additional attention.  The Government contends that Petitioner's claim should only be brought against the warden of Petitioner's detention facility.  For that proposition, Respondent relies on *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), which held that the warden of a habeas petitioner's detention facility is, generally speaking, the immediate physical custodian of a person, and therefore the one who can be subject to a habeas corpus action.

### i.    The immediate custodian rule

Section 2243 instructs a habeas court to direct the writ "to the person having custody of the person detained."  28 U.S.C. § 2243.  "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful

custody." *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). As such, the proper habeas respondent must have "the power to produce the body of [the petitioner] before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). In *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), the court held that the INS District Director is the immediate custodian of an individual in immigration detention. *Id.* at 322. INS' "District Directors" are the same as today's ICE Field Office Directors; *Roman*'s holding has been applied without controversy to Field Office Directors. *See Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006); *e.g. Garcia v. Raycraft*, No. 1:25-CV-1281, 2025 WL 3122800, at *7 (W.D. Mich. Nov. 7, 2025) (Jarbou, C.J.).

### ii. *Roman* is binding circuit authority

Respondent's position boils down to an issue that has been addressed previously by courts in this circuit and by this court on several prior occasions: whether *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003) was overruled by *Rumsfeld v. Padilla*, 542 U.S. 426 (2004). In *Padilla*, the Supreme Court held that in habeas, "the default rule is

6

that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. at 435.  However, while setting a "default" rule, the Court explicitly "decline[d] to resolve" the question of who the proper respondent is for "a habeas petition filed by an alien detained pending deportation." *Padilla*, 542 U.S. at 435 n.8 (acknowledging *Roman* without purporting to question its holding). Courts in this circuit have therefore found, for many years prior to this change in ICE policy, that *Roman*'s rule still applies to habeas proceedings with immigrant petitioners facing deportation.  *See Khodr v. Adduci*, 697 F. Supp. 2d 774, 776 (E.D. Mich. 2010) (Murphy, J.);[2] *Parlak v. Baker*, 374 F. Supp. 2d 551, 557 (E.D. Mich. 2005) (Cohn, J.), *vacated on other grounds* 2006 WL 3634385 (6th Cir. 2006); *Hango v. McAleenan*, No. 1:19-CV-606, 2019 U.S. Dist. LEXIS 211697, at *4 (N.D. Ohio Dec. 9, 2019) (applying *Roman* rather than *Padilla* because *Padilla* does not apply to detainment pending removal); *Orozco-Valenzuela v. Holder*, No. 1:14 CV 1669, 2015 U.S. Dist. LEXIS 44697,

---

[2] *But see Badjie v. Raycraft*, No. 2:25-CV-13404, 2025 WL 3530072, at *1 (E.D. Mich. Dec. 9, 2025) (Murphy, C.J.) (transferring case to Western District).

2015 WL 1530631, at *4 (N.D. Ohio Apr. 6, 2015) (holding ICE Field Office Director Rebecca Adducci was the proper party in § 2241 habeas action of alien challenging his detention, without a bond hearing, pending removal); *Rosario v. Prindle*, No. 11-217-WOB-CJS, 2011 U.S. Dist. LEXIS 150602, 2011 WL 6942560, at *2 (E.D. Ky. Nov. 28, 2011) (ICE field director proper respondent in habeas petition challenging continued detention pending reconsideration of denial of removal appeal); *but see, e.g., Gjoliku v. Chertoff*, No. 06-11747, 2006 U.S. Dist. LEXIS 45498, at *3 n.1 (E.D. Mich. Jun. 26, 2006) (O'Meara, J.) (transferring a habeas petition to the Western District of Michigan after concluding that the Calhoun County jail warden was the appropriate immediate custodian and noting that "*Roman* was decided before the Supreme Court decision in *Padilla* . . . and cannot be reconciled with it.").

*Roman*'s rule is a clear statement in a published decision of the court of appeals.[3]  *Padilla* reserved the question of how its ruling would

---

[3] Nor has the Sixth Circuit itself cast particular doubt on the decision.  *See Stanifer v. Brannan*, 564 F.3d 455, 458 (6th Cir. 2009) (engaging "in an extended discussion" of *Roman*'s immediate custodian rule in order to explain why the facts in the case before it did not warrant application of that otherwise valid rule); *Enriquez-Perdomo v. Newman*, 149 F.4th 623, 634 (6th Cir. 2025) (citing *Roman*'s

apply to cases with petitioners facing deportation. *Padilla*, 542 U.S. at 435 n.8. This court must be cautious before treating explicit statements of binding law to have been overruled without clear direction by the court of appeals or Supreme Court. *United States v. Wehunt*, 230 F. Supp. 3d 838, 846 (E.D. Tenn. 2017) ("This Court certainly has an obligation to follow the Supreme Court where an intervening decision of that Court directly reverses an opinion of the Sixth Circuit or implicitly reverses same through a case with indistinguishable facts. If, however, the intervening decision neither expressly nor implicitly overrules the prior Sixth Circuit decision, this Court must be extremely careful in concluding that circuit precedent is no longer good law, and should only deviate from such authority where it is powerfully convinced that the circuit will overrule itself at the next available opportunity.") (citations omitted, cleaned up).

Several other courts in this district have very recently reinforced that *Roman* is binding authority. *See, e.g.*, *Amaya v. Raycraft*, No. 25-13539, 2025 WL 3530273, at *1 (E.D. Mich. Dec. 9, 2025) (Levy, J.),

---

immediate custodian analysis in support of the more general proposition that federal officials play a uniquely hands-on role in the immigration context).

*Velasco-Sanchez v. Raycraft*, No. 2:25-CV-13730, 2025 WL 3553672, at *2 (E.D. Mich. Dec. 11, 2025) (McMillion, J.), *Rodriguez v. Raycraft*, No. 2:25-CV-13606, 2025 WL 3565685, at *3 (E.D. Mich. Dec. 12, 2025) (Berg, J.).  This is not a new conclusion; this conclusion is one shared by courts in this district for many years prior, and (up until recently), by Respondents as well.  *See, e.g.*, *Uljic v. Baker*, No. 06-13106, 2006 WL 2811351, at *2 (E.D. Mich. Sept. 28, 2006*)* (naming the field office director is "consistent with *Padilla* and *Roman*"); *Naresh v. Klinger*, No. 19-cv-12800, 2019 WL 5455469, at *2 fn.2 (E.D. Mich. Oct. 24, 2019) (Berg, J.) (applying *Roman* despite *Padilla* because "the day-today control wardens have over an alien detainee is exercised only at the direction of ICE"); *Garcia v. Raycraft*, No. 1:25-CV-1497, 2025 WL 3454293, at *9 (W.D. Mich. Dec. 2, 2025) (Jarbou, C.J.) (dismissing, at the Government's request, the North Lake Processing Center Warden because "the Detroit ICE Field Office Director is the only proper Respondent").

10

### iii.   *Roman* fulfills the purpose of the immediate custodian rule.

The court also notes, for several reasons, that *Roman* is not incompatible with *Padilla*.  *Padilla*, 542 U.S. 426 (2004), concerned the question of whether remote supervisory officials are proper habeas respondents, not the question of who is the "immediate custodian" for noncitizens detained by ICE.

*First*, *Roman* is consistent with the forum-shopping concerns present in *Padilla*.  *Padilla* noted that the immediate custodian rule "serves the important purpose of preventing forum shopping by habeas petitioners.  Without it, a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction." *Padilla*, 542 U.S. at 447 (2004). *Roman* likewise held that habeas petitioners in immigration detention should in most instances name their *immediate* custodian as the respondent, not "other [higher level] officials with control over the alien's detention and release." *Roman,* 340 F.3d at 321.  This rule, as the Sixth Circuit put it, "is clear and easily administered," "effectuates section 2243's plain meaning[,]" and discourages forum-shopping by

11

excluding distant respondents located in a more favorable jurisdiction. *Id.* at 322. By holding that the District Director is the immediate custodian and proper Respondent, *Roman* necessarily limits the possible forums – and the alleged issue of long arm jurisdiction is not present here where Respondent Raycraft is present in this district.

*Second*, the finding that Raycraft, as the Detroit ICE Field Office Director, is Petitioner's immediate custodian is consistent with the function of his office and the purpose of the immediate custodian rule. Facility wardens, *Roman* emphasized, are mere "agents" who act "solely pursuant to the direction of" the ICE Field Office Director, rather than actors with actual custody over the detainees. *See Roman*, 340 F.3d at 320. Nothing presented to this court suggests that the warden of the detention facility has any power to release Petitioner without a directive from Raycraft. Any action taken by the warden as to Petitioner would be at the sole direction of Raycraft; Petitioner is seeking release from federal custody and only a federal respondent can release him. Meanwhile, the warden of the facility has no involvement whatsoever in a bond hearing, nor does the warden of the facility have the power to provide one, which is the relief Petitioner is seeking in this

case.  The warden of North Lake is "a mere functionary, no different than an individual jailor posted outside Petitioner's cell block" whose "involvement here is merely to provide a service to ICE."  *See Doe v. Barr*, No. 20-cv-02263, 2020 WL 1984266, at *5 (N.D. Cal. Apr. 27, 2020).  Raycraft, as the person with the power to order Petitioner's release and provide a bond hearing, is the individual with "immediate" custody of Petitioner.  *See Velasco-Sanchez v. Raycraft,* No. 2:25-CV-13730, 2025 WL 3553672, at *2 (E.D. Mich. Dec. 11, 2025).

### iv.  The court's prior rulings on this issue and Respondents' prior position

The court also notes that Respondents' changing litigation posture before the undersigned renders their current position on this issue particularly unconvincing; before this same court in previous cases addressing this issue, Respondents cited *Roman* and asserted that "the only proper respondent in a habeas corpus case is the detainee's immediate custodian.  In the immigration context, that is the ICE Field Office Director."  *Morales-Martinez*, No. 25-13303, ECF No. 5, PageID.51 (Respondents' Brief) (citing *Roman*, 340 F.3d at 320).

13

In light of all the considerations above, this court has found it more convincing that *Roman* was not overruled by *Padilla* and remains binding law in this circuit; no new facts or law are advanced here to change that conclusion.  Respondents' brief is nearly identical to those previously filed.  *See Romero Garcia, v. Raycraft*, No. 25-CV-13407, 2025 WL 3252286, at *2 (E.D. Mich. Nov. 21, 2025).[4]  The court again concludes that *Roman* remains binding law in this circuit and that its holding is consistent with *Padilla*; this court must follow binding circuit authority in the absence of clear contrary direction.

There is no dispute in this posture that Petitioner is currently in removal proceedings.  ECF No. 1, PageID.8; ECF No. 7, PageID.56.  Therefore, *Roman* applies, ICE Field Director Raycraft is a proper Respondent, and venue in this district is proper because "the official with operational control over the confinement of Petitioner is present within the territorial district of this court."  *See Amaya v. Raycraft*, No. 25-13539, 2025 WL 3530273, at *4 (E.D. Mich. Dec. 9, 2025); *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 494–95 (1973) (the writ

---

[4] *See also Kadagan v. Raycraft*, No. 25-13602, 2025 WL 3268895, at *2-3 (E.D. Mich. Nov. 24, 2025); *Zambrano Paz v. Raycraft*, No. 25-13563, 2025 WL 3473361, at *2-3 (E.D. Mich. Dec. 3, 2025).

of habeas corpus acts "upon the person who holds him in what is alleged to be unlawful custody").

## B. Petitioner's detention without bond is contrary to the plain language of the Immigration and Nationality Act

Respondent advances two arguments as to Petitioner's detention under the INA: first, that the court should require administrative exhaustion, and second, that Petitioner is properly detained under § 1225(b)(2).  Both arguments have been brought previously before this court, and are without merit.

### i.    Administrative Exhaustion

Before determining the merits of this petition, the court must first address Respondents' argument that it should require Petitioner to exhaust his administrative remedies before he is permitted to proceed with his habeas petition.  Respondents' arguments on this point appear identical to those previously brought in similar cases before the undersigned.  The court again finds that exhaustion is not necessary, for the reasons explained in *Morales-Martinez*, 2025 WL 3124695.

While adopting its prior analysis entirely, in short, the court agrees with the majority of district courts in this circuit and around the nation in deciding not to enforce an exhaustion of administrative remedies requirement for these kinds of habeas petitions, because all three factors regarding prudential exhaustion weigh against imposing an exhaustion requirement. *See, e.g.*, *Casio-Mejia v. Raycraft*, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases). Because administrative review in this instance would be futile, and because every additional day in unlawful detention presents a hardship for Petitioner, the court declines to impose an exhaustion requirement upon Petitioner and will address the merits of his petition. *See Lopez-Campos*, 2025 WL 2496379, at *5.

### i. Statutory and Regulatory Framework

At issue are the meaning of two related provisions of the Immigration and Nationality Act: 8 U.S.C. § 1225(b)(2), and 8 U.S.C. § 1226(a). Congress established these two statutes to principally govern detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. The first – Section 1225 – is a mandatory detention provision; the second statutory provision – Section 1226 – provides for a

discretionary detention framework.  8 U.S.C. § 1225, 1226(a).  There is no dispute that noncitizens arrested and detained under Section 1226(a) have a right to request a custody redetermination (i.e. a bond hearing) before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

For nearly thirty years, Respondents and the federal courts recognized that noncitizens who entered the United States without inspection and were apprehended years later were eligible for a bond hearing before an immigration judge under 8 U.S.C. § 1226(a), because they were not deemed "arriving" or "seeking admission," were not subject to § 1225(b)(2), and were therefore entitled to a custody hearing. Thus, individuals who previously entered without inspection and are subsequently placed in removal proceedings receive bond hearings if ICE chooses to detain them, unless their criminal history renders them ineligible.

However, on July 8, 2025, Immigration and Customs Enforcement (ICE), "in coordination with" the Department of Justice, issued "Interim Guidance Regarding Detention Authority for Applicants for Admission," which instructed all ICE employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who initially entered the United

17

States without inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), no matter how long they have resided in the United States.

### ii.   Lawfulness of Petitioner's Detention under the INA

The central question to this habeas petition is which detention framework properly applies to a person who has lawfully lived in the United States for several years, was never lawfully admitted to the country, and is now facing removal proceedings.  Respondents say § 1225(b)(2)(A), Petitioner says § 1226(a).

Broadly, Respondents' interpretation is that any noncitizen present unlawfully in the United States is perpetually "seeking admission" to the United States and is subject to the mandatory detention statute in § 1225(b)(2).  ECF No. 5, PageID.58.  That interpretation is inconsistent with ordinary dictionary meaning, existing precedent, historical practice, and the structure and text of the INA.  The structure of these provisions of the INA accomplish two different goals.  Section 1225 is "framed [] as a part of the process that 'generally begins at the Nation's borders and ports of entry, where the

18

Government must determine whether [noncitizens] seeking to enter the country are admissible.'" *E.g.*, *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157, 2025 WL 2337099, at *8 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018)); *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *7 (E.D. Mich. Aug. 29, 2025). Section 1226(a), on the other hand, applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal (like Petitioner). *Jennings*, 583 U.S. at 288. Put simply, Section 1225 applies to noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country." *Id.* Although other courts have ably delved into the subject in more detail, both the legislative history and decades of consistent agency practice support this reading of the statute. *See, e.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *7.

This court previously engaged in a detailed exercise of statutory interpretation to explain why Section 1226(a) applies to persons like Petitioner; it is not necessary to repeat that entire analysis here. It is sufficient to say that the court adopts its prior analysis in full. *See Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D.

Mich. Nov. 7, 2025).  But in summary: a broad consensus of district courts have agreed that "§ 1225 clearly establishes an inspection scheme for when to let noncitizens into the country" and "governs the *entrance* of noncitizens to the United States," and no more.  *E.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *5; *Barrera v. Tindall*, No. 25-541, 2025 U.S. Dist. LEXIS 184356, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (holding the text of § 1225 is focused "on inspections for noncitizens when they arrive" and "suggest[s] [it] is limited to noncitizens arriving at a border or port and are presently 'seeking admission' into the United States.").  This court agrees with the overwhelming majority viewpoint and sees no reason to reverse its own prior legal conclusions.[5]  "A decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."  18 Moore's Federal Practice 3d § 134.02[1][d].  However, "[a] court should give considerable weight to its own previous decisions unless and until

---

[5] Although Respondents rely on *Buenrostro-Mendez v. Bondi*, No. 25-20496, 166 F.4th 494 (5th Cir. Feb. 6, 2026), and *Avila v. Bondi*, No. 25-3248, __ F.4th__, 2026 WL 819258 (8th Cir. Mar. 25, 2026), neither case is binding on this court, and the court is not persuaded by the majority holding in either case.  The Sixth Circuit recently heard oral argument in *Lopez-Campos v. Raycraft, et al.*, 25-1965 (6th Cir.). and will undoubtedly offer its views in due course.

they have been overruled or undermined by the decision of a higher court or a statutory overruling." *Id.* at § 134.02[1][a]; *see, e.g.*, *Morales-Martinez*, 2025 WL 3124695; *Romero Garcia*, 2025 WL 3252286. On review of the relevant cases, every judge in this district that has weighed in on the issue has come out the same way. *See, e.g.*, *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 797 F.Supp.3d 771, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (McMillion, J.); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025) (White, J.); *Gimenez Gonzalez v. Raycraft*, No. 25-CV-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025) (Kumar, J.); *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695 (E.D. Mich. Nov. 7, 2025) (Behm, J.); *Jimenez Garcia v. Raybon*, No. 2:25-CV-13086, 2025 WL 2976950 (E.D. Mich. Oct. 21, 2025) (DeClercq, J.); *Contreras-Lomeli v. Raycraft*, No. 2:25-CV-12826, 2025 WL 2976739 (E.D. Mich. Oct. 21, 2025) (Ludington, J.); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294 (E.D. Mich. Oct. 29, 2025) (Edmunds, J.); *Gonzalez v. Raycraft*, No. 25-13502, 2025 WL 3218242, (E.D. Mich. Nov. 17, 2025) (Michelson, J.); *Diego v. Raycraft*, No. 25-13288, 2025 WL 3159106 (E.D. Mich. Nov. 12, 2025) (Levy, J.); *Hurtado-Medina v. Raycraft*, No. 25-CV-

13248, 2025 WL 3268896, at *1 (E.D. Mich. Nov. 24, 2025) (Leitman, J.); *Torres-Vasquez v. Raycraft*, No. 25-13571, 2025 WL 3473359, at *3 (E.D. Mich. Dec. 3, 2025) (Parker, J.); *Rodriguez v. Raycraft*, No. 2:25-CV-13606, 2025 WL 3565685, at *3 (E.D. Mich. Dec. 12, 2025) (Berg, J.); *Xiao v. Raycraft*, No. 26-10337, 2026 WL 608337, at *8 (E.D. Mich. Mar. 4, 2026) (Grey, J.).

Therefore, Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.  Petitioner has resided in the United States for several years and was not arrested upon arrival at the U.S. border or a port of entry.  Under § 1226(a), Petitioner is entitled to a discretionary bond determination hearing.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  Because Petitioner has been detained without having received such a hearing, he is in federal custody in violation of federal law.  His habeas petition will thus be granted, and Respondent Raycraft will be directed to provide Petitioner with a bond hearing under § 1226(a) or otherwise release him.

### C.    Due Process

The court declines to decide the merits of Petitioner's due process claim, given that the court herein grants the relief he seeks based on its interpretation of the applicability of § 1226(a).  If Respondents do not provide Petitioner with a bond redetermination hearing or release him within the time ordered, Petitioner may renew his Fifth Amendment Due Process claim.

## IV.    CONCLUSION

Therefore, the court **GRANTS** the petition for writ of habeas corpus (ECF No. 1).  It is therefore **ORDERED** that:

1. Respondent Raycraft shall provide Petitioner with a bond hearing under § 1226(a) on or before **April 23, 2026**, or otherwise release him; and

2. Respondent Raycraft shall file a status report to certify compliance with this order on or before **April 24, 2026**.  The status report shall detail when Petitioner was released or when his bond hearing occurred, if bond was granted or denied, and—if bond was denied—the reasons for the denial.

It is **FURTHER ORDERED** that all Respondents except for ICE Field Office Director Kevin Raycraft are **DISMISSED** without prejudice.

Because this order resolves the petition, the text-only order enjoining Petitioner's transfer is **VACATED**, and the motion to vacate that order (ECF No. 8) is **DENIED** as moot.

The court retains jurisdiction to enforce the terms of this order.

**SO ORDERED**.

Date: April 16, 2026                    s/F. Kay Behm
                                        F. Kay Behm
                                        United States District Judge

24